IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| GULF COAST COMMERCIAL CORP., )<br>d/b/a INN ON FIFTH, a Florida corporation, )<br>　　　　　　　　　　　　　　　　　　　　　)<br>　　　Plaintiff, 　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　　　　)<br>v. 　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　)<br>GORDON RIVER HOTEL ASSOC., 　　　　　　 )<br>a Florida General Partnership, d/b/a 　　　　 )<br>BAYFRONT INN ON FIFTH, and/or 　　　　　 )<br>alternatively d/b/a BAYFRONT INN ON 5TH, )<br>TIMOTHY G. YOUNGQUIST, as a General 　 )<br>Partner and Individually, HARVEY B. 　　　　 )<br>YOUNGQUIST, as a General Partner and 　　　)<br>Individually, TRISTA S. YOUNGQUIST, as a 　)<br>Domain Name Registrant and Individually, 　 )<br>COMFORT INN & MARINA DOWNTOWN, 　　)<br>an unknown business entity, and VARIOUS 　 )<br>JOHN DOES, JANE DOES, and ABC 　　　　　)<br>and ABC COMPANIES, 　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　　　　)<br>　　　Defendants. 　　　　　　　　　　　　　 ) | Civil Action No. 2:05cv564-MMH-SPC<br>Judge Thomas A. Wiseman, Jr. |

**MEMORANDUM**

Plaintiff Gulf Coast Commercial Corp. ("Gulf Coast") filed its Verified Complaint against Defendant Gordon River Hotel Associates ("Gordon River") on November 29, 2005 and its Amended Complaint on May 10, 2006 alleging Gordon River unfairly competed by using the "Bayfront Inn on Fifth" mark, thereby infringing on Gulf Coast's "The Inn on Fifth" service mark.[1]  (Doc. No. 86.)  On May 18, 2006, Judge Hernandez Covington denied Gulf Coast's Motion for Entry for Preliminary Injunction based on the fact that The Inn on Fifth mark had yet to mature into a registered trademark and Gulf Coast had not otherwise carried its burden of persuading the Court that The Inn on Fifth was a valid, protectable mark.  (Doc. No. 87, at 3, 30.)  On October 17, 2006, the United States Patent and Trademark Office ("USPTO") registered The Inn on Fifth mark

---

[1]Although registered as a service mark, the terms "service mark" and "trademark" are used interchangeably herein as the standards and law discussed in this case are interchangeable.

to Gulf Coast under Registration No. 3,157,67.[2]  (Doc. No. 100, Ex. A..)

Gulf Coast filed its motion for summary judgment as to its claims for Federal Trademark Infringement/Unfair Competition (Count I) and Florida Unfair Competition (Count X) on February 2, 2007. (Doc. No. 99.)  Gordon River filed its response in opposition on February 16, 2007.  (Doc. No. 103.) For the reasons set forth below, the Court will **DENY** Gulf Coast's motion for summary judgment as to Count I and Count X.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This case involves a dispute between two companies that own hotels located on Fifth Avenue in Naples, Florida.  The following facts are undisputed unless otherwise noted.  The plaintiff, Gulf Coast, owns and operates The Inn on Fifth, a "boutique" inn featuring eighty-seven guest rooms and suites, as well as a spa known as the Spa on Fifth.  The defendant, Gordon River, owns and operates the Bayfront Inn on Fifth, a "downtown waterfront boutique hotel featuring ninety-eight rooms," located approximately six blocks or one-half mile from The Inn on Fifth. (Doc. No. 100-10.)  Each hotel has a website where customers can find information on accommodations, hotel amenities and the Naples area, as well as inquire about and make a reservation and contact the hotel staff.  The Inn on Fifth's website is identified by the domain name innonfifth.com and the website for the Bayfront Inn on Fifth is located by the domain names bayfrontinnnaples.com and bayfrontinnonfifth.com.

Gulf Coast began using The Inn on Fifth as its mark in January of 1997.  Since that time Gulf Coast has advertised and promoted The Inn on Fifth as a luxury boutique hotel through print, television, internet and radio advertising; marketing materials such as brochures, signs and billboards; promotional opportunities at trade shows; internet blasts and mailings to prior and prospective customers; and promotional items such as letter openers, shirts, and embroidered beach towels. (Doc. No. 100-5, at 2.)  Gulf Coast has spent more than $7 million on advertising and promotion of The Inn on Fifth as a luxury boutique hotel.  (Doc. No. 100, at 2.)

---

[2]The application submitted was for a "Trademark/Service Mark Application" on the Principal Register. The mark is registered to Gulf Coast for "services" which include "hotels; resort hotel; hotel, bar and restaurant services; catering; providing banquet and social function facilities for special occasions; providing conference rooms; providing convention facilities; providing facilities for exhibitions; providing temporary accommodations; resort lodging services; and providing information for all of the foregoing via global computer networks." (Doc. No. 100-2, at 6.)

Gulf Coast applied for registration of The Inn on Fifth mark on October 12, 2005 based on Gulf Coast's substantially exclusive and continuous use of the mark in commerce for at least five years immediately before the date of the application.

This dispute began around the same time Gulf Coast submitted its service mark application. In the fall of 2005, Gulf Coast learned that Gordon River planned to use the words "Inn on Fifth" in re-naming its hotel, which since 1985 had operated under a franchise agreement as a Comfort Inn. On November 1, 2005, Gulf Coast sent Gordon River a letter requesting that Gordon River not adopt or use the words "Inn on Fifth" in its hotel's new name. Gordon River was aware of The Inn on Fifth's use of the mark in connection with the same or similar goods and services, but it did not respond to the letter, nor did it respond to a subsequent letter from Gulf Coast to the same effect. (Doc. No. 100-4, at 4-5; Doc. No. 100-10, at 60.) On November 29, 2005, before Gordon River renamed its hotel and began using the contested mark, Gulf Coast filed its initial complaint in federal court. In December 2005, Gordon River stopped operating its hotel under the Comfort Inn name and in January 2006 Gordon River reopened the hotel under the new name – "Bayfront Inn on Fifth." (Doc. No. 100, at 3.)

According to Trista Youngquist, the decision to re-name the hotel was made after a series of "brainstorming" sessions with Timothy Youngquist wherein they discussed different names including names that would describe the location of the property such as "Bayfront Inn on Fifth", "Bayside Inn on Fifth", "Seaside Inn on Fifth," and names with "marina" and "downtown" in them. (Doc. No. 100-10, at 14-15, 27, 35.) At the time Gordon River made the decision to change the name of its hotel, there were five other hotels located on Fifth Avenue in Naples including the Wellesley Inn, the Red Roof Inn, Marriott Fairfield, Hotel Escalante and The Inn on Fifth. (Doc. No. 100-10, at 15.) However, The Inn on Fifth was its biggest competitor on Fifth Avenue, located only one-half mile away, and was in fact, the only hotel in Naples whose name featured the words "on fifth."

On April 19, 2006 Gulf Coast brought its application for trademark/service mark registration of The Inn on Fifth to the attention of Gordon River. At that same time, pursuant to the Lanham Act, the USPTO examiner determined that Gulf Coast had satisfied the requirements for registration and The Inn on Fifth mark was published in the Official Gazette for public review and comment. 15 U.S.C.§§ 1062(a), 1063. Gordon

River did not oppose the registration of The Inn on Fifth mark at any time during the comment period.

On May 10, 2006, by leave of court, Gulf Coast filed its First Amended Complaint asserting fifteen different claims including claims of trademark infringement/unfair competition under federal law (Count I) and unfair competition under Florida law (Count X) against Gordon River, doing business as Bayfront Inn on Fifth, as well as Timothy Youngquist and Harvey Youngquist, owners of Gordon River, and Trista Youngquist, the hotel manager for eleven years.  Because each of the individual defendants are a general partner of and/or a principal of Gordon River and because Gulf Coast does not assert distinct claims against these individual defendants, the Court will refer to the defendants collectively as "Gordon River."

On May 18, 2006, Judge Hernandez Covington denied Gulf Coast's Motion for Entry for Preliminary Injunction based on the fact that The Inn on Fifth mark had yet to mature into a registered trademark and Gulf Coast had not otherwise carried its burden of persuading the Court that The Inn on Fifth was a valid, protectable mark.  (Doc. No. 87, at 3, 30.)  Subsequently, on October 17, 2006, the USPTO registered The Inn on Fifth mark to Gulf Coast under Registration No. 3,157,67 pursuant to Section 2(f) of the Lanham Act. (Doc. No. 100, 5-6 & Ex. A..)  On February 2, 2007, Gulf Coast filed its motion for summary judgment as to its claims for trademark infringement under federal law and unfair competition under federal and state law. (Doc. No. 99.)

According to Gulf Coast, there is no question (1) that it has rights in the term The Inn on Fifth; and (2) that Gordon River's use of Bayfront Inn on Fifth creates a likelihood of confusion as to source or affiliation with respect to The Inn on Fifth, and therefore, it is entitled to judgment as a matter of law as to its claims of trademark infringement under federal.  (Doc. No. 100, at 5.)  Moreover, Gulf Coast also contends, based on similar arguments, that it is entitled to judgment as a matter of law as to its claim of unfair competition under Florida law.  Gulf Coasts requests the Court grant its motion for summary judgment,  permanently enjoin Gordon River from any further use of "inn on fifth" in its name and award it costs and attorneys' fees.  (Doc. No. 100, at 18.)  In response, Gordon River argues that Gulf Coast has not established that it owns a valid, protectable mark and even if it did, it has not established the elements necessary to show a likelihood of confusion. (Doc. No. 103.)  Gulf Coast's motion for summary judgment as to Count I and Count X is now before this Court.  For the reasons set forth below, the Court will **DENY** Gulf Coast's motion for summary

judgment.

## II.    STANDARD OF REVIEW

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 323. In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When deciding a summary judgment motion, the Court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. *Id.* at 251. The applicable substantive law will identify those facts that are material. Courts in the Eleventh Circuit have held that cases must be decided on their facts, and in some trademark infringement cases, summary judgment is appropriate when there is no material factual issue on infringement of the trademark. *HBP, Inc. V. American Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1325 (M.D. Fla. 2003) (citations omitted). Although likelihood of confusion generally is a question of fact, this Circuit has decided the issue as a matter of law in infringement cases.

## III.   DISCUSSION

Gulf Coast alleges that Gordon River unfairly competed by infringing on its service mark, The Inn on Fifth, which was registered on October 17, 2006, approximately ten months after Gordon River began using the Bayfront Inn on Fifth mark at issue. Gulf Coast asserts that there are no issues of material fact and it is entitled to judgment as a matter of law on both its claims for Federal service mark infringement and Florida common law unfair competition. The Court will now consider each of Gulf Coast's arguments.

### A.    Whether Gulf Coast Is Entitled to Summary Judgment on its Claim of Service Mark Infringement Under Federal Law.

To establish its claim of trademark infringement, Gulf Coast must show that: (1) it owns The Inn on Fifth mark and the mark is a valid, protectable trademark; and (2) Gordon River's use of the contested mark, Bayfront Inn on Fifth, is likely to cause confusion in the minds of the consumers about the relationship or affiliation between The Inn on Fifth and its services and the Bayfront Inn on Fifth and its services. *KP Permanent Make-Up, Inc. V. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (citations omitted); *Lone Star Steakhouse & Saloon, Inc. V. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1380 (11th Cir. 1997); *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). Gulf Coast argues that there is no issue of material fact and it is entitled to judgment as a matter of law because: (1) it comes before the Court with a presumption that it owns The Inn on Fifth mark, that the mark is valid, and that it is entitled to exclusive use of the mark in connection with hotel services; and (2) the evidence shows that all seven factors Florida courts consider in determining likelihood of confusion as to source or affiliation weigh in favor of Gulf Coast. (Doc. No. 100, at 5-7.)

In response, Gordon River argues that: (1) Gulf Coast is only entitled to a presumption that The Inn on Fifth mark acquired secondary meaning as of the date it was registered in October 2006, and it has not satisfied the "high degree of proof" necessary to establish that The Inn on Fifth mark acquired secondary meaning prior to the date Gordon River began using the term Bayfront Inn on Fifth in January of 2006; and (2) there is no likelihood of confusion between Gulf Coast's mark and Gordon River's Bayfront Inn on Fifth mark. (Doc. No. 103, at 9-11.) As discussed further below, the Court finds that there are genuine issues of material fact remaining on the issue of whether The Inn on Fifth mark acquired secondary meaning prior to the date Gordon River began using the term Bayfront Inn on Fifth in January of 2006 and the Court therefore denies Gulf Coast's motion for summary judgment as it relates to Count I for trademark infringement/unfair competition under Federal law.

Moreover, because the Court finds that there is a genuine issue of material fact as to whether The Inn on Fifth had acquired distinctiveness prior to its registration in October of 2006, it is not necessary to consider whether Gulf Coast has proved the likelihood of confusion between the two names at this time. *See Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investacorp) E.C.*, 931 F.2d 1519, 1525-26 (11th Cir. 1991); *Am. Television & Communications Corp. v. Am. Communications*, 810 F.2d 1546, 1548 (11th Cir. 1987) ("Only

6

if plaintiff has proved [that it has a protectable mark] need we reach the issue of whether it has also proved the likelihood of confusion between the two names, the other element needed for recovery").

      **1.**      **Whether The Inn On Fifth Mark is a Valid, Protectable Trademark.**

"The Lanham Act provides national protection of trademarks [and service marks] in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish between competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985). Marks that are merely descriptive or primarily geographically descriptive under 15 U.S.C. § 1052(e) ("Section 2(e)"), such as The Inn on Fifth mark, may be registered if the applicant shows that the mark has acquired secondary meaning under 15 U.S.C. § 1052(e)(1)(f) ("Section 2(f)"). Gulf Coast's registration of The Inn on Fifth mark is under Section 2(f) based on the showing that Gulf Coast had used the mark in connection with its hotel in Naples, Florida exclusively for at least five years prior to the date of its application in October 2005. As the holder of a registered mark, Gulf Coast may bring a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

      a.      *Rebuttable Presumption of Secondary Meaning*

Registration of a mark under the Lanham Act entitles the owner to a presumption that the mark is valid and enables the owner to sue an infringer. 15 U.S.C. § 1115(a). More specifically, under the Lanham Act, a certificate of registration acts as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the mark. 15 U.S.C. § 1057, 115(a). Registration of the mark, therefore, provides the plaintiff with a presumption that the mark is not merely descriptive or generic, or, if it is merely descriptive, that it has accorded secondary meaning. This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness." *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) (citations omitted). In light of these principles, Gulf Coast relies on its registration of The Inn on Fifth mark to establish for the Court that the mark is valid and it is entitled to exclusive use of the mark in connection with hotel services. (Doc. No. 100, at 7.) However, Gulf Coast's reliance on the presumption of secondary meaning is misplaced.

There is no dispute that Gulf Coast owns the Inn on Fifth mark or that it obtained a registration for the

mark under Section 2 (f) from the USPTO on October 17, 2006. (Doc. No. 100, at 6, Doc. No. 103, at 3.) Further, it is clearly established that the registration of The Inn on Fifth mark under Section 2(f) provides constructive notice throughout the United States of Gulf Coast's claim to ownership and creates a rebuttable presumption that the Inn on Fifth mark had acquired secondary meaning as of the date of registration. 15 U.S.C. § 1052(f), 15 U.S.C. § 1072. However, as Gordon River points out and Gulf Coast apparently concedes, The Inn on Fifth mark is, at most, a geographically descriptive mark,[3] and it is only entitled to protection if it has acquired secondary meaning prior to the date Gordon River began using the term "on Fifth" in connection with its hotel. (Doc. No. 103, at 9.) Although Gulf Coast is entitled to a presumption that its mark has acquired secondary meaning as of the date it was registered, October 17, 2006, the relevant date for determining secondary meaning is January 2006 because it is the date Gordon River began using the Bayfront Inn on Fifth mark

      b.  *Secondary Meaning of The Inn on Fifth Before January 2006.*

In order for Gulf Coast to succeed on its motion for summary judgment, the Court must find that The Inn on Fifth mark acquired distinctiveness or secondary meaning prior to January 2006. It is well-settled that the plaintiff has the burden of sustaining a high degree of proof to establish secondary meaning in its service mark. *See Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003). Gulf Coast apparently relies on the assumption that the burden in this case would be on Gordon River to rebut the presumption that secondary meaning exists because The Inn on Fifth mark is federally registered. (Doc. No. 100, at 5-7.) While it is true that Gulf Coast's service mark is entitled to a presumption that it has acquired

---

[3] In its order denying Gulf Coast's motion for entry of a preliminary injunction in May of 2006 the court found that The Inn on Fifth mark was either descriptive or geographically descriptive, not generic, but also found that Gulf Coast had not presented sufficient evidence to establish that The Inn on Fifth mark had acquired secondary meaning. The court therefore concluded that The Inn on Fifth mark was not protectable. (Doc. No. 87, at 29.) Gordon River relies on the court's analysis and determination as support for its contention that The Inn on Fifth is "merely descriptive" and has not acquired secondary meaning necessary for protection. Gulf Coast does not dispute this characterization of The Inn on Fifth mark. The Court acknowledges that the court's prior determination was made before The Inn on Fifth matured into a registered trademark and Gulf Coast therefore retained the burden of persuading the court that it held a valid, protectable trademark. (Doc. No. 87, at 3.) Gulf Coast does not address this issue, relying instead on the presumption of secondary meaning established with the registration of the mark, which was issued after the court's Order denying injunctive relief. (Doc. No. 100, at 6.) However, as discussed herein, because the relevant date for determining secondary meaning in this case is the date Gordon River began using the contested mark in January 2006 and *not* the date The Inn on Fifth mark was registered in October 2006, Gulf Coast has the burden of sustaining a high degree of proof to establish secondary meaning in its service mark.

distinctiveness, Gulf Coast is only entitled to a presumption that its trademark acquired secondary meaning as of the date that it was registered. Gulf Coast's mark was registered on October 17, 2006. The presumption, therefore, does not operate against uses that began prior to October 17, 2006. It is undisputed that Gordon River began using the term Bayfront Inn on Fifth in January 2006. Thus, the presumption is inapplicable in this case, and the burden is on Gulf Coast to prove that its service mark is valid by a preponderance of the evidence.

"Secondary meaning" is the connection in the consumer's mind between the mark and the source or origin of goods or services. *Gift of Learning Foundation, Inc.*, 329 F.3d at 800. Whether The Inn on Fifth mark has in fact acquired secondary meaning is merely a question of fact. It requires the Court to consider what the customers understand by the use of term The Inn on Fifth. If they understand it only as a hotel on Fifth Avenue, then it makes no difference what efforts Gulf Coast has made to get them to understand more; Gulf Coast has failed, and it cannot say that when Gordon River use of the words "Inn on Fifth" or simply "on Fifth" to identify its hotel it is taking away customers who wanted to deal with The Inn on Fifth. Consequently, to prove secondary meaning, Gulf Coast must show that, in the minds of the public, the primary significance of the mark The Inn on Fifth, including not only the name, but also the logo, is to identify the boutique hotel on Fifth Avenue in Naples, Florida owned by Gulf Coast.

The Eleventh Circuit has set forth a number of factors the Court must consider when determining whether a trademark has acquired secondary meaning, including: (1) length and manner of the mark's use; (2) the nature and extent of advertising and promotion; (3) the efforts made by Gulf Coast to promote conscious connection in public's mind between The Inn on Fifth mark and its business; and (4) the extent to which the public actually identifies The Inn on Fifth mark with Gulf Coast's boutique hotel and its services. *Id.* Although Gulf Coast relies on the federal registration of its mark as evidence of its secondary meaning, Gulf Coast has also presented evidence that it: (1) exclusively used The Inn on Fifth mark in connection with its hotel services for over eight years; (2) spent over $7 million to advertise and promote The Inn on Fifth as a luxury boutique hotel through print, television, internet and radio advertising; marketing materials such as brochures, signs and billboards; promotional opportunities at trade shows; internet blasts and mailings to prior and prospective customers; and promotional items such as letter openers, shirts, and embroidered beach

towels; and (3) did this all in an effort to promote a conscious connection in the public's mind between The Inn on Fifth mark and its boutique hotel. (Doc. No. 100, at 9-10; Doc. No. 100-5, at 2.) In addition, Gulf Coast has also introduced affidavits from several of its employees and business customers identifying incidents of confusion between The Inn on Fifth and the Bayfront Inn on Fifth. (Doc. No. 100-7; Doc. No. 100-8; Doc. No. 100-9; & Doc. No. 100-11.)

The fact that because of long use and monies spent on advertising and promotion, some persons might recognize The Inn on Fifth mark as designating Gulf Coast's boutique hotel is not enough alone to establish the secondary meaning of a mark that would otherwise be merely descriptive. The ultimate test of secondary meaning is whether the term The Inn on Fifth has become broadly known to the public as denoting the boutique hotel owned and operated by Gulf Coast in Naples, Florida, and the duration of use required under this test to create a secondary meaning cannot be measured, as a matter of law, by any accurate criterion. As the court previously noted in its order denying injunctive relief and Gordon River points out in its response, Gulf Coast has yet to present any direct evidence to show the extent to which the public actually identifies the name The Inn on Fifth with Gulf Coast's hotel and its services. (Doc. No. 87, at 24-26.) There is no survey evidence or other quantifiable proof in the record to support a finding that The Inn on Fifth mark acquired secondary meaning prior to Gordon River's use of the Bayfront Inn on Fifth mark in January 2006.

After reviewing the facts and evidence in the light most favorable to the non-movant Gordon River, the Court concludes that there are genuine issues of material fact remaining on the issue of secondary meaning. The Court reaches this conclusion because it cannot determine as a matter of law that The Inn on Fifth mark was recognized as an indicator of source at the time Gordon River began using the contested term the Bayfront Inn on Fifth. In light of the heavy burden placed on Gulf Coast, the Court finds that the evidence presented by Gulf Coast is not sufficient for the Court to hold on summary judgment that customers distinguished between The Inn on Fifth, the Bayfront Inn on Fifth and other businesses using the term "on Fifth" in their names before January 2006.

**B.   Whether Gulf Coast is Entitled to Summary Judgment as to Its Claim for Unfair Competition Under Florida Law.**

Gulf Coast also argues that it is entitled to judgment as a matter of law as to its claim for unfair competition under Florida law. According to Gulf Coast, in order to establish a claim for unfair competition in

Florida, it must prove "deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion," and it has clearly satisfied this burden with "the many instances of actual confusion and the six other factors that are relevant to determining likelihood of confusion . . . ." (Doc. No. 100, at 15.) In response Gordon River points to Florida case law, arguing that Gulf Coast must also prove that the descriptive term The Inn on Fifth has the necessary secondary meaning to establish a claim for unfair competition under Florida common law. (Doc. No. 103, at 19-20.) Gordon River cites to several Florida cases in support of its contention that "Florida case law reflects the policy considerations behind the granting of monopolies based upon generic and descriptive terms" and Gulf Coast "seeks to restrict Gordon River's use of everyday descriptive words and thus achieve forbidden, anti-competitive ends." (Doc. No. 103, at 19-20.)

A cause of action for injunctive relief under the Florida common law of unfair competition based on trademark infringement requires Gulf Coast to allege and prove the following elements: (1) Gulf Coast adopted and used The Inn on Fifth name or mark in the Naples, Florida area as a means of establishing good will and reputation, and to describe, identify or denominate its boutique hotel and its services and to distinguish it from similar boutique hotels marketed by others; (2) through its association with Gulf Coast's boutique hotel, The Inn on Fifth, as a descriptive name, acquired a secondary meaning as indicating or identifying Gulf Coast as the source; (3) Gordon River's adoption of the Bayfront Inn on Fifth mark to identify its hotel is confusingly similar to Gulf Coast's already established trademark; and (4) as a consequence of Gordon River's action, customer confusion of source or as to sponsorship of the services offered by Gordon River is likely. *See American Bank of Merritt Island v. First American Bank & Trust*, 455 So. 2d 443, 445 (Fla. App. 5 Dist. 1984). Although Gulf Coast cites to at least one case in support of its contention that "[u]nfair competition is [a] more broadly conceived tort than trademark infringement," this principle does not obviate the requirement that Gulf Coast show that its descriptive mark, The Inn on Fifth, had acquired secondary meaning and was an already established mark at the time Gordon River began using the Bayfront Inn on Fifth mark in January 2006.

As discussed above, whether or not Gulf Coast's mark has acquired secondary meaning by use, as is alleged in the Complaint, and whether or not Gordon River's use of the name Bayfront Inn on Fifth is likely to cause customer confusion are questions of fact to be determined at trial. As noted in Gulf Coast's trademark registration, there is no dispute that the word "inn" is purely descriptive and is not entitled to

protection, but the Court cannot hold as a matter of law that the words "Inn on Fifth" that are common to both parties are protected in this context or that they are or are not capable of causing customer confusion. Accordingly, based on the facts and the legal evidence presented by the parties, the Court concludes that there are also genuine issues of material fact remaining as to Gulf Coast's claim for unfair competition under Florida law.

## IV.   CONCLUSION

For the reasons set forth above and for good cause shown, the Court hereby DENIES Plaintiff Gulf Coast's Motion for Summary Judgment.

*[signature]*

Thomas A. Wiseman, Jr.
Senior United States District Judge
Sitting by Designation in the Middle District of Florida